UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| CHARRIS K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-825-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Charris K. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on August 14, 2019, alleging disability beginning August 1, 2010 (the disability onset date), due to chronic obstructive pulmonary disorder ("COPD") and psoriasis of the feet and legs. Transcript ("Tr.") 15, 198-205, 206-211, 223. The claims were denied initially on November 27, 2019, and again on

reconsideration on January 10, 2020, after which Plaintiff requested an administrative hearing. Tr. 15.

On November 23, 2020, Administrative Law Judge David Neumann ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Nicholas DiVirgilio, an attorney. Tr. 15. 33-53. Stephen B. Schmidt, an impartial vocational expert, also appeared and testified. *Id*.

The ALJ issued an unfavorable decision on December 7, 2020, finding that Plaintiff was not disabled. Tr. 15-27. On June 8, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 7, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 7, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.[2]

2. The claimant has not engaged in substantial gainful activity since August 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease ("COPD") and psoriasis (20 CFR 404.1520(c) and 416.920(c)).).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: avoid concentrated pollutants, wetness, humidity and temperature extremes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 15, 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[2] As the ALJ explained elsewhere in his decision, Plaintiff must establish disability on or before the date last insured of June 30, 2015 in order to be entitled to DIB. Tr. 15-16.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-26.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on August 14, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 27. The ALJ also determined that based on the application for supplemental security income protectively filed on August 14, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## <u>ANALYSIS</u>

Plaintiff asserts two points of error. Plaintiff first argues that additional evidence from treating pulmonologist Hartwig O. Boepple, M.D. ("Dr. Boepple"), at The Pulmonary Group of WNY, submitted for the first time to the Court, constitutes new and material evidence, and therefore, the Court should remand this case to the Commissioner to take additional evidence. *See* ECF No. 17-1 at 8-12. Plaintiff's second point of error challenges the ALJ's evaluation of the November 2019 opinion of consultative examiner Nikita Dave, M.D. ("Dr. Dave"), arguing that the ALJ's finding that a portion of Dr. Dave's opinion was unpersuasive was not supported by substantial evidence. *See id.* at 12-15.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination. *See* ECF No. 8-1 at 12-18. The Commissioner also argues that the ALJ properly considered the opinion of consultative examiner Dr. Dave. *See id.* at 18-19. Finally, the Commissioner argues that remand is not warranted based on the additional evidence proffered by Plaintiff to the Court. *See id.* at 19-23.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, including the opinion evidence and Plaintiff's treatment history, and his finding that Plaintiff could perform work at all exertional levels with environmental limitations was supported by substantial evidence. Notably, the evidence shows that Plaintiff's respiratory impairment did not become symptomatic until six years after her alleged onset date, and over one year after the expiration of her date last insured for DIB. Furthermore, upon review of the additional evidence proffered by Plaintiff, the Court finds that this evidence would not alter the ALJ's decision, and therefore, remand is not warranted on this basis.

## I.    The ALJ's RFC finding is Supported by Substantial Evidence.

As noted above, the ALJ determined that Plaintiff retained the RFC to perform work at all exertional levels but with the following non-exertional limitations: avoid concentrated pollutants, wetness, humidity and temperature extremes. Tr. 19-25; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).

At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner).

Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claims on August 14, 2019, and therefore, the 2017 regulations are applicable to her claims.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a

prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the

Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Here, the ALJ's RFC finding was supported by substantial evidence. Tr. 19-25. *See* 20 C.F.R. §§ 404.1527, 416.927. First, as the ALJ observed, Plaintiff alleged she was unable to work due to COPD and psoriasis on her lower extremities, but the record reflects that she did not stop working on that date due to her medical condition, but rather, she stopped working because she was laid off. Tr. 20, 223. The ALJ also considered the treatment notes of record and observed that Plaintiff had a history of COPD since at least November 2007, and was referred to a pulmonologist. Tr. 21, 396-97. The ALJ went on to conduct a detailed review of Plaintiff's COPD treatment over the next several years.[3]

On October 6, 2010, Plaintiff followed up with pulmonologist Dr. Boepple, whom she had not seen since 2007. Tr. 21, 409-11. She reported a "chronic smoker's cough" especially in the morning, but she denied any sputum or shortness of breath; she also reported that she continued to smoke one and one-half packs of cigarettes per day. Tr. 21, 409-10. Dr. Boepple's examination showed normal lung respiratory rate, clear breath sounds bilaterally and no edema. Tr. 21, 410. Pulmonary function test ("PFT") results showed evidence of only mild obstruction, and the remainder of Dr. Boepple's examination was unremarkable. Tr. 21, 410, 414. Dr. Boepple

---

[3] The Court notes that Plaintiff's arguments focus on her COPD and not psoriasis. *See generally* ECF No. 7-1.

diagnosed COPD, noting that because Plaintiff was not symptomatic, he would not start her on any bronchodilators at that time. Tr. 21, 410.

On October 14, 2010, Plaintiff followed up with primary care provider M.P. Whistler, FNP ("Ms. Whistler"), at Cleveland Hill Medical Group. Tr. 415-17. Plaintiff reported she had been unemployed for over a year, and was "living off [her] mom, drinking too much and smoking all the time." Tr. 415.  Plaintiff stated that she was not interested in stopping drinking, but she would try to quit smoking. *Id*. Ms. Whistler observed normal respiratory findings, as well as unremarkable physical examination findings. Tr. 21, 416-17. She diagnosed COPD and noted that Plaintiff was not on medications as she had no symptoms yet. Tr. 21, 417. The ALJ additionally noted that spirometry testing performed on May 4, 2012 revealed moderate obstruction. Tr. 21, 424.

The ALJ next observed that on October 11, 2012, Plaintiff reported that her pulmonologist would not prescribe an inhaler because she had no interest in quitting smoking and did not want an inhaler. Tr. 21, 425. Plaintiff denied shortness of breath and felt her breathing was better since she was not working in construction. *Id*. Ms. Whistler's examination showed normal respiration rate, no wheezing, clear lungs and demonstrated clear voice. Tr. 21, 426. The remainder of the physical examination was unremarkable. Tr. 426-27. A chest x-ray dated October 10, 2013 was normal. Tr. 21, 434.

During a general physical examination with Ms. Whistler on October 20, 2014, Plaintiff denied any symptoms. Tr. 21, 454. Ms. Whistler noted wheezing and mildly decreased airflow and diagnosed Plaintiff with COPD; however, Plaintiff declined pulmonary function testing, reported she did not presently use an inhaler, and when counseled to stop smoking, she stated it was "not a good time to quit." Tr. 21, 455-56. Ms. Whistler's physical examination was otherwise unremarkable. Tr. 455-56.

11

On August 17, 2015, six weeks after the expiration of her date last insured, Plaintiff followed up with Dr. Boepple and reported she continued to smoke one pack of cigarettes per day; she had no complaints of shortness of breath; and she did not use inhalers. Tr. 21, 461. Dr. Boepple's examination showed normal respiratory rate with clear breath sounds bilaterally. Tr. 21, 462. Plaintiff was diagnosed with COPD with mild obstruction on PFT. Id. Dr. Boepple noted that Plaintiff continued to be asymptomatic and did not use any inhalers. Id.

In August 2016, over one year after the expiration of her date last insured, Plaintiff was seen by Jennifer Rankle, PA ("Ms. Rankle"), in Dr. Boepple's office, and reported that she continued to experience shortness of breath that worsened on exertion and improved with rest, and only occasional wheezing. Tr. 22, 475. Plaintiff also reported that, although her symptoms were noticeable, they "[did] not really interfere with her daily living." Tr. 22, 475-76. Plaintiff, who continued to smoke one and one-half packs of cigarettes per day, was diagnosed with COPD and started on medications, including a rescue inhaler to use as needed. Tr. 22, 476. On February 27, 2017, Plaintiff had a follow-up visit with Dr. Boepple; she reported no complaints of shortness of breath and did not use an inhaler. Tr. 22, 487. Dr. Boepple's respiratory examination was unremarkable, and PFT showed moderate obstruction with favorable bronchodilator response. Tr. 488. Dr. Boepple restarted Symbicort. Tr. 22, 488.

During the period between the expiration of Plaintiff's June 2015 date last insured and her August 2019 SSI application, Plaintiff continued to report no complaints of shortness of breath, continued to smoke cigarettes, and did well on Symbicort. Tr. 22, 499. On March 28, 2018, Plaintiff reported "she didn't have too much shortness of breath" and only mild wheezing with laying down; however, she had run out of medications a couple of weeks prior. Tr. 22, 502. Examination showed no wheezing, no sputum, no chest congestion, no shortness of breath, and clear breath sounds bilaterally. Tr. 22, 502-03. On September 24, 2018, Dr. Boepple noted that

Plaintiff had no complaints of shortness of breath and was doing well on Symbicort. Tr. 22, 525. Dr. Boepple also noted two benign lung nodules that had been stable from 2006 to 2010, but he also noted that Plaintiff was an "intractable smoker who remained at risk for malignancy." Tr. 525. Respiratory examination was normal. Tr. 526.

On May 10, 2019, Plaintiff followed up with Dr. Boepple and reported no complaints of shortness of breath and was doing well on medication. Tr. 22, 530. Plaintiff had moderate obstruction on PFT, but an examination continued to show no abnormalities with normal respiratory rate, clear breath sounds bilaterally and no edema. Tr. 531. Dr. Boepple again advised Plaintiff to quit smoking. *Id.*

During a follow-up visit with Dr. Boepple on November 26, 2019 (three months after filing her SSI application), Plaintiff had no complaints of shortness of breath and reported she was doing well on medication. Tr. 22, 705-06. Dr. Boepple observed normal respiratory findings and continued Plaintiff's medications. Tr. 22, 705-07. As the ALJ noted, a CT scan in February 2020 revealed stable nodule with mild emphysema, and Ms. Rankle assessed "known underlying COPD with emphysema and obstruction on PFT." Tr. 22, 702-03.

At a follow-up visit with Dr. Boepple on May 18, 2020, Plaintiff reported "some progressive shortness of breath;" she had run out of one of her medications about a week prior; and she still smoked one pack of cigarettes per day. Tr. 22, 701. An examination showed clear breath sounds bilaterally clear without wheezes, rhonchi or rales, but diminished throughout. Tr. 22, 702. In June 2020, Plaintiff told Dr. Boepple she had no shortness of breath and was doing well on medications. Tr. 22, 697. She continued to smoke one pack of cigarettes per day. *Id.* Dr. Boepple observed that Plaintiff's respiratory rate was normal, and she had clear breath sounds bilaterally. Tr. 698.

Based on the foregoing, ALJ reasonably concluded that the clinical findings from 2010 through Plaintiff's last date insured of June 2015 showed that although Plaintiff was diagnosed with COPD, she was asymptomatic and did not need medication. Tr. 24. In fact, as the ALJ noted, Plaintiff was only prescribed respiratory medications when her COPD became symptomatic in August 2016, well over one year after the expiration of her June 2015 date last insured. Tr. 24. *See Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989) (a claimant is entitled to DIB only if she establishes that her condition or conditions reached disabling severity on or before the expiration of her insured status) (citing 42 U.S.C. § 423(a)(1)(A)); *see also* 20 C.F.R. § 404.130; 20 C.F.R. § 404.131; 20 C.F.R. 404.315(a); 20 C.F.R. § 404.320(b). The ALJ also noted that Plaintiff's symptoms did not interfere with her daily living. 24, 476.

Moreover, Plaintiff's physical examinations during this time period were largely unremarkable (Tr. 410, 416-17, 426-27, 455-56), and although the evidence reflects that Plaintiff developed mild emphysema in 2020, clinical respiratory findings contemporaneously reflected clear breath sounds bilaterally without wheezes, rhonchi or rales (Tr. 697-98, 702, 705-06). Thus, there was nothing to suggest that Plaintiff's overall respiratory functioning was not well-controlled or severely limiting. Accordingly, the clinical evidence supported the ALJ's finding that Plaintiff retained the RFC to perform for work at all exertional levels with environmental limitations. Tr. 19. *See Christine Lee S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1008, 2022 WL 103108, at *11 (N.D.N.Y. Jan. 11, 2022) (finding that although spirometry tests indicate that plaintiff had moderate obstructive airway disease, nothing in the record sets forth any respiratory limitations specific to plaintiff's COPD that require greater environmental limitations than those included in the RFC).

Additional support for the ALJ's RFC finding is found in the November 26, 2019 opinion of state agency medical consultant D. Miller, D.O. ("Dr. Miller"), who reviewed the available

14

evidence and opined that Plaintiff had no exertional limitations. Tr. 24, 59-61. Dr. Miller also opined that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dust, gases and poor ventilation. Tr. 60. Thus, Dr. Miller's opinion is consistent with the ALJ's finding that Plaintiff was able to perform work at all exertional levels with environmental limitations. Tr. 19. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (State agency medical and psychological consultants are highly qualified and experts in Social Security disability evaluation, and their prior administrative medical findings must be considered); see also *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the opinions of state agency medical consultants can constitute substantial evidence when supported by other evidence in the record).

In addition to the clinical findings and the opinion evidence, the ALJ further relied on Plaintiff's statements and reported activities to support the RFC finding. Tr. 20-25. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)).

The ALJ noted Plaintiff's allegations of shortness of breath; difficulty walking, standing, sitting, climbing stairs; and also noted that her COPD was triggered by stress, humidity and cold weather. Tr. 20, 245-46, 248. However, the ALJ also noted that Plaintiff reported she was able to perform personal care tasks and prepare meals daily (Tr. 597, 600), and she shopped, spent time with others, including visiting people and attending family functions and birthday parties, and traveled independently (Tr. 46, 244, 597, 600). Tr. 20. *See Poupore*, 566 F.3d at 307 (claimant's

abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

The ALJ also noted inconsistencies in Plaintiff's statements regarding her work activity. Tr. 24-25. At the hearing, Plaintiff testified she had not worked since her alleged onset date of August 1, 2010, and denied performing any side jobs (Tr. 40, 42); however, treatment records documented that in October 2014,  she spent time cleaning out her parents' home, painted it, getting it ready to sell and actually denied any symptoms (Tr/ 454). Tr. 25. In October 2016, she reported sores on the bottoms of both feet after power washing a house in bare feet and going up and down a ladder. Tr. 25, 477. In October 2018, she reported working with her brother in his small construction business. Tr. 25, 407. On April 4, 2020, Ms. Whistler noted that Plaintiff was laid off ten years ago and had been working side jobs. Tr. 25, 616. *See* 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if the work a claimant had done was not substantial gainful activity, it may show that the claimant can do more work than he actually did). Based the foregoing, the ALJ reasonably concluded that Plaintiff's activities showed that she was able to perform work-related activities and supported the RFC finding.

As previously noted, it is Plaintiff who ultimately bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

**II.     The ALJ Properly Considered Dr. Dave's Consultative Opinion.**

Plaintiff also challenges the ALJ's evaluation of the portion of Dr. Dave's November 2019 opinion limiting Plaintiff to no more than light to moderate sustained physical exertion through

the day based on her COPD and psoriasis. *See* ECF No. 7-1 at 12-15 (citing Tr. 23-24, 602). Plaintiff argues that the ALJ did not cite to any evidence to support his finding that this portion of Dr. Dave's opinion was unpersuasive because it was inconsistent with objective clinical findings showing no significant physical abnormalities and/or restrictions. *See id.* However, the ALJ's decision is replete with references to the objective clinical findings, as well as Plaintiff's activities of daily living, as discussed above. Tr. 20-25. Therefore, Plaintiff's argument is unavailing.

Here, the ALJ considered Dr. Dave's opinion in accordance with the new regulatory framework outlined above and explained that while the environmental limitations portion of the opinion were persuasive and consistent with the record, the portion limiting Plaintiff to light to moderate physical exertion was not persuasive because it was inconsistent with the objective clinical findings. Tr. 23-24, 602; *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency factor). As the ALJ explained, the objective clinical findings showed no significant physical abnormalities and/or restrictions, and Dr. Dave's opinion was inconsistent with treatment records that consistently showed normal physical examinations, and inconsistent with Plaintiff's reported functional abilities, as described throughout the ALJ's decision and discussed above. Tr. 24. Accordingly, contrary to Plaintiff's assertion, the ALJ cited substantial evidence of record in support of his finding that the exertional portion of Dr. Dave's opinion was not persuasive, and the Court finds no error.

**III.     New Evidence Presented to This Court Does Not Warrant Remand.**

Plaintiff argues that "new and material evidence" submitted for the first time to this Court warrants remand of this case to the Commissioner to take additional evidence, namely, evidence from treating pulmonologist Dr. Boepple dated August 30, 2021. *See* ECF No. 7-1 at 9-12. For the reasons discussed below, Plaintiff's argument fails.

As the Second Circuit explained in *Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988), claimants ordinarily should have but one opportunity to prove entitlement to, or eligibility for, benefits, otherwise "disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations." Accordingly, a claimant asking the district court to invoke 42 U.S.C. § 405(g)'s authorization to order the Commissioner to take additional evidence must satisfy the three-part showing summarized in *Tirado*:

> [A]n appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. *See Szubak*, 745 F.2d at 833; *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. *See Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

*Tirado*, 842 F.2d at 597.

The evidence at issue consists of a medical statement from Dr. Boepple dated August 30, 2021, and PFT reports that, for the most part, are duplicative of PFT reports already in the record and reviewed by the ALJ. *See* ECF No. 7-4 at 4-29.  After reviewing the full administrative record, as well as Dr. Boepple's medical statement and the PFT reports attached thereto, the Court finds there is insufficient cause to remand this case to the Commissioner to take additional evidence pursuant to sentence six of § 405(g).

As previously noted, most of the evidence Plaintiff submitted to the Court is not new because it is duplicative of evidence that was already before the ALJ. *See* Tr. 21-22, 711-13, 878-94. While the January 18, 2021 PFT report submitted to the Court is new (*see* ECF 7-4 at 7-9), it is not material because it post-dates the ALJ's December 10, 2020 decision and does not relate

back to the relevant time period that was before the ALJ. In any event, the January 18, 2021 PFT result shows moderate obstruction, which is consistent with the moderate PFT results already reviewed by the ALJ. Tr. 21, 22. 488, 531. Therefore, the PFT reports submitted to the Court fail to meet the *Tirado* test.

Dr. Boepple's medical statement also does not meet the *Tirado* test. *See* ECF No. 7-4 at 4-6. Dr. Boepple opined that due to chronic bronchitis, dyspnea on exertion, and moderate COPD, Plaintiff was limited to standing and sitting for 30 minutes at one time, was able to work for only four hours per day, was limited to occasionally lifting five pounds, and could not tolerate dust, smoke, or fumes. *See id*. Dr. Boepple also stated that these limitations "partially" applied back to August 1, 2010. *See id*. at 5. However, upon review, the Court finds that Dr. Boepple's opinion is inconsistent with his own treatment notes and other evidence of record.

Plaintiff's PFT from October 6, 2010, ordered by Dr. Boepple, revealed only "mildly reduced flows" and "mild partially reversible obstruction." Tr. 889-91; *see also* ECF 7-4 at 27-29. On that date, Dr. Boepple determined that Plaintiff's "PFTS show mild obstruction," and he would "not start her on any bronchodilators at this time." Tr. 794. Consistent with Dr. Boepple's treatment note, one week later, Ms. Whistler examined Plaintiff and noted unremarkable respiratory examination findings, as well as unremarkable physical examination findings overall. Tr. 767-68. In the same treatment note, Ms. Whistler stated that Plaintiff "is not on meds as no [symptoms] yet." Tr. 766, 768.

Other evidence reveals that Plaintiff continued to smoke in October 2012, when she told Ms. Whistler that she had no interest in quitting and did not want an inhaler. Tr. 742. Plaintiff also denied shortness of breath, and her respiratory examination was unremarkable. Tr. 742-43. Plaintiff was encouraged to "get back to pulmonology," but Plaintiff was "not receptive to quitting [smoking] or going [back to pulmonology]." Tr. 744. In October 2013, Plaintiff again denied

respiratory symptoms to Ms. Whistler; she reported she was still smoking, and she had not seen Dr. Boepple in over a year. Tr. 746. Her respiratory examination was normal. Tr. 747. In October 2014, Ms. Whistler examined Plaintiff and found "auscultate mildly decreased airflow." Tr. 751. At that time, Plaintiff declined a PFT and reported she was not using an inhaler. Tr. 752.

Evidence in the period between Plaintiff's date last insured in June 2015 and her August 2019 SSI application and beyond continued to show that her symptoms were not disabling, as the respiratory examination findings by Dr. Boepple and Ms. Whistler remained unremarkable. Tr. 22, 499, 502-03, 525, 530-31, 762, 764. Notably, Plaintiff only became symptomatic for COPD in June 2016 (Tr. 476), which undermines Dr. Boepple's opinion that Plaintiff was essentially unable to perform work-related activities as far back as August 2010 (*see* ECF No. 7-4 at 5). Finally, even after Plaintiff was diagnosed with mild emphysema in early 2020, Plaintiff's objective clinical findings throughout 2020, remained unremarkable with clear breath sounds bilaterally and normal respiratory rate. Tr. 698, 702, 912, 916.

Because none of the additional evidence submitted to the Court demonstrates a reasonable possibility that it would have influenced the ALJ to decide Plaintiff's application differently, remand is not warranted on this basis. Furthermore, as explained above, the ALJ's decision thoroughly discussed his rationale for concluding that Plaintiff could perform a full range of work with the noted non-exertional limitations, and the Court finds no error in the ALJ's findings.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very

deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE